**In re SAVE VENICE NEW
YORK, INC.**

Nos. 00–1450, 75/222,218.

United States Court of Appeals,
Federal Circuit.

July 27, 2001.

Kimberly J. McGraw, Baker Botts, L.L.P., of New York, NY, argued for appellant. With her on the brief was Bradley B. Geist.

Stephen Walsh, Associate Solicitor, Office of the Solicitor, Patent and Trademark Office, of Arlington, VA, argued for appellee. With him on the brief were Nancy C. Slutter, Acting Deputy Solicitor; and Mark Nagumo, Associate Solicitor. Of counsel on the brief was Catherine K. Krebs, Attorney.

Before MICHEL, GAJARSA, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

This case involves an appeal from the United States Patent and Trademark Office Trademark Trial and Appeal Board ("Board"). Save Venice New York, Inc. ("Save Venice") appeals the decision of the Board affirming the final rejection of Application Serial No. 75/222,218 for a composite mark consisting of the phrases "THE VENICE COLLECTION" and "SAVE VENICE INC." and an image of the winged Lion of St. Mark. Because we find the Board's refusal to register the mark was based on substantial evidence, we affirm.

## BACKGROUND

■ Save Venice is a not-for-profit New York corporation devoted to preserving and restoring some of the cultural treasures of Venice, Italy. Since 1970, Save Venice has used the service mark SAVE VENICE for fundraising and newsletters in conjunction with its preservation efforts. The SAVE VENICE service mark has been registered on the principal register since 1991 (Reg. No. 1,639,071). In addition, since 1971 Save Venice has used the currently unregistered Lion of St. Mark design for its newsletters and fundraising activities. On January 7, 1997, Save Venice filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") for a "composite mark" which amalgamates the phrases "THE VENICE COLLECTION" and "SAVE VENICE, INC." with a drawing of the Lion of St. Mark[1] as shown below:

---

1. "Composite marks" are marks that incorporate otherwise separable words, phrases and/or designs into a single mark.

The applicant sought registration on the principal register of this mark to cover a variety of goods in nine different international designated classes, including potpourri, tableware made of precious and nonprecious metals, lamps, clocks, art prints, paper products, residential furniture, dinnerware, glassware, bedding and carpets.[2] With the exception of some glass products, none of the applicant's designated goods originated in Venice.[3]

The PTO examiner refused registration of those goods not originating in Venice under 15 U.S.C. § 1052(e)(3) because she considered that the mark was primarily geographically deceptively misdescriptive. According to the examiner, the "primary significance" of the composite mark is geographic. That is, the examiner determined that the mark primarily signifies the geographic location, Venice, Italy. Relying on an encyclopedia and a gazetteer, the examiner found that Venice, Italy is a location known for paper, publishing, printing, textiles, jewelry, art objects, glassmaking, housewares and lace. Finding that all of the applicant's claimed goods are associated with traditional Venetian products, the examiner rejected the application on the grounds that the public would mistakenly believe that Venice, Italy was the source of applicant's goods sold under the proposed mark.

Save Venice requested reconsideration, arguing that the primary significance of the mark is not geographic but rather a qualitative evocation of "the history, art, culture and beauty of Venice." In addition, Save Venice submitted a declaration by its executive director who asserted that she knew from personal experience that no Venetian industry produces or sells any of the applicant's goods. The PTO granted reconsideration. However, using information from web sites and published books on flags of the world and on Venice, Italy, the examiner established that the lion design

---

2. The nine international classes at issue here are Classes 3, 8, 11, 14, 16, 20, 21, 24, and 27.

3. The examiner refused registration of the applicant's glass goods that originated in Venice under 15 U.S.C. § 1052(e)(2) because the mark was found to be primarily geographically descriptive. This rejection is not part of the present appeal because Save Venice filed a separate, divisional application for those glass goods.

in the proposed mark is a substantially identical reproduction of the Lion of St. Mark from the Venetian flag and the regional flag of Veneto. Further, the examiner determined that the public clearly identifies the Lion of St. Mark as symbolizing the city of Venice. The examiner concluded that, when viewed as a whole, the composite mark is primarily geographic due to this unique symbolic design and the prominent wording THE VENICE COLLECTION. Finally, the examiner found that although some of the goods claimed by the applicant are "not goods for which Venice is best known," consumers could reasonably believe they originated in Venice as "ancillary products related to the traditional crafts and industries of Venice ... as part of a natural expansion" of Venetian industries. Given the geographic significance of the applicant's mark and the association between the applicant's claimed goods and traditional Venetian products, registration was refused because the mark was found primarily geographically deceptively misdescriptive.

■ Save Venice appealed to the Board, which affirmed the examiner's refusal to register the mark. *In re Save Venice N.Y., Inc.*, No. 75/222,218, 2000 WL 370526 (TTAB March 1, 2000). Noting the prominence of THE VENICE COLLECTION lettering within the mark and the symbolic importance of the Lion of St. Mark to Venetian culture, the Board upheld the examiner's finding that the primary significance of the mark is the geographic location Venice, Italy. In considering whether consumers would associate applicant's goods with Venice, Italy, the Board divided the goods into two groups: (1) goods identical to traditional Venetian products, and (2) goods related to such products. In considering the first group—goods identi-

cal to traditional Venetian products—the Board found a clear "goods/place association" between those goods and Venice, Italy.[4] The Board determined that the second group—goods for which there was no direct evidence indicating they were the type produced in Venice—"reflect[ed] product types, decorative themes and material composition" that consumers "would associate with the city of Venice." Accordingly, the Board upheld the examiner's refusal to register the mark. Save Venice appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (1994).

## DISCUSSION

### I. Standard of Review

■ Whether a mark is primarily geographically deceptively misdescriptive is a question of fact. *In re Compagnie Generale Maritime*, 993 F.2d 841, 845, 26 USPQ2d 1652, 1655 (Fed.Cir.1993). Likewise, whether a geographic location is known for particular goods is a question of fact. *In re Loew's Theatres, Inc.*, 769 F.2d 764, 768, 226 USPQ 865, 868 (Fed.Cir. 1985). In reviewing appeals from the Board, this court has been instructed by the Supreme Court to uphold the Board's factual determinations unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *Dickinson v. Zurko*, 527 U.S. 150, 152, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). 5 U.S.C. § 706 (1996) We have subsequently determined that factual determinations made by the Board are reviewed under a substantial evidence standard. *On–Line Careline v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir.2000). However, the Board's legal conclusions, including its interpretations of

---

4. The "goods/place association test," as explained in greater detail below, asks whether the relevant public would associate goods sold under a mark with the geographic place indicated by that mark.

the Lanham Act and the legal tests it applies in measuring registrability, are reviewed *de novo, Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000). *In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361, 1365, 51 USPQ2d 1513, 1515 (Fed.Cir.1999).

## II. Analysis

■ Section 2(e)(3) of the Lanham Act provides in relevant part:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> (e) Consists of a mark which . . .
>
> (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them. . . .

Lanham Act § 2, 15 U.S.C. § 1052(e)(3) (1994 & Supp. V 1999). Whether a mark is primarily geographically deceptively misdescriptive is determined according to a two-part test where the examiner has the initial burden of proving that: (1) the mark's primary significance is a generally known geographic location; and (2) consumers would reasonably believe the applicant's goods are connected with the geographic location in the mark, when in fact they are not. *In re Wada,* 194 F.3d 1297, 1300, 52 USPQ2d 1539, 1540 (Fed.Cir. 1999); *Institut National Des Appelations D'Origine v. Vintners Int'l Co.,* 958 F.2d 1574, 1580, 22 USPQ2d 1190, 1195 (Fed. Cir.1992).

### A.

■ Under the first prong of the test—whether the mark's primary significance is a generally known geographic location—a composite mark such as the applicant's proposed mark must be evaluated as a whole. *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents,* 252 U.S. 538, 545–46, 40 S.Ct. 414, 64 L.Ed. 705 (1920); *In re*

*Dial–A–Mattress Operating Corp.,* 240 F.3d 1341, 1345–46, 57 USPQ2d 1807, 1811 (Fed.Cir.2001). It is not erroneous, however, for the examiner to consider the significance of each element within the composite mark in the course of evaluating the mark as a whole. *In re National Data Corp.,* 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed.Cir.1985); *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes,* 871 F.2d 590, 594, 10 USPQ2d 1443, 1445 (6th Cir.1989); *In re Hester Indus.,* 230 USPQ 797, 798 n. 5, 1986 WL 83614 (TTAB 1986).

■ The Board found that the most prominent part of the proposed mark is the phrase "THE VENICE COLLECTION" in large lettering at the top of the mark, a term that creates an unmistakable reference to Venice, Italy. The words at the bottom of the mark, "SAVE VENICE, INC.," also reference Venice. Linguistically, therefore, the mark focuses most strongly on "Venice," a geographic location in Italy well-known to United States consumers. The Board also found that these verbal references to "Venice" are reinforced by their combination with the image of the Lion of St. Mark whose significance was likewise shown to be identified with Venice, Italy. Relying on a gazetteer, an encyclopedia, published books, and web sites, the examiner established that the lion in the applicant's mark specifically reproduces the winged Lion of St. Mark with its paw embracing a stone tablet. The examiner further observed that this figure appears on the official Venetian flag, on the regional flag of Veneto, and in statuary found throughout the city of Venice. Moreover, the examiner noted that the Venetian flag with the Lion of St. Mark has symbolized the city of Venice since, some believe, the ninth century. Therefore, the examiner provided substantial evidence establishing a *prima facie* case that the primary significance of the

applicant's composite mark is geographic, namely that the mark primarily signifies Venice, Italy.[5]

In response to the examiner's *prima facie* case, the applicant argues that the strongest part of the proposed mark is its previously registered and incontestable service mark, "SAVE VENICE."[6] Accordingly, Save Venice contends that consumers would associate the proposed mark with the fundraising activities of Save Venice, rather than with the city of Venice as a geographical origin for the goods. We disagree.

A registered mark is incontestable only in the form registered and for the goods or services claimed. *See In re Merrill Lynch,* 828 F.2d 1567, 1568, 4 USPQ2d 1141, 1141 (Fed.Cir.1987) (holding applicant's incontestable registration of a service mark for "cash management account" did not automatically entitle applicant to registration of that mark for broader financial services); *In re Bose Corp.,* 772 F.2d 866, 873, 227 USPQ 1, 6–7 (Fed. Cir.1985). A registered mark on goods other than those previously registered carries no presumption of distinctiveness. *In re Loew's,* 769 F.2d at 769, 226 USPQ at 869 (holding incontestable mark DURANGO for cigars insufficient to establish distinctiveness of DURANGO for chewing tobacco). Here, the proposed composite mark is an entirely different mark from SAVE VENICE standing alone, and is used on entirely different goods from those services previously registered under the SAVE VENICE mark. Because the incontestable service mark SAVE VENICE used for fundraising services carries no presumptive weight within this composite mark as applied to the nine international classes of consumer goods at issue, we therefore turn to the Board's evaluation of the graphic and linguistic strength of this element.

The Board determined that the phrase "THE VENICE COLLECTION" dominates the composite mark because it is displayed in large lettering across the top of the mark; in comparison, the phrase "SAVE VENICE, INC." is depicted in small font at the bottom of the composite mark. Hence, the Board considered the "SAVE VENICE, INC." letters to be a minor compositional portion of the composite mark that is dominated by "THE VENICE COLLECTION" lettering and the image of the Lion of St. Mark. Because the Board's determination is based on substantial evidence, we affirm its conclusion that the phrases and design comprising the applicant's proposed composite mark as a whole are primarily geographic.

### B.

The second prong of the test is premised on a determination of whether or not the public would be deceived by the mark into believing that the goods are associated with the particular geographic location depicted by the mark. It is usually referred to as the "goods/place association" test. Under this prong, we consider whether the public would reasonably identify or associate the goods sold under the

---

5. Indeed this court has held that even less evidence may suffice. *See In re Loew's,* 769 F.2d at 766, 226 USPQ at 866 (dictionary adequate to establish *prima facie* geographic significance of "Durango").

6. Once a mark has been registered on the Principal Register and in continuous use for five years, it is considered statutorily "incontestable." 15 U.S.C. § 1065 (1994). The primary benefits of incontestability are that the registrant may rely on the registration of this mark as conclusive evidence of the validity and registration of the mark, as well as the registrant's ownership of and exclusive right to use the mark in connection with the goods and services listed on the registration. 15 U.S.C. § 1115(b) (1994).

mark with the geographic location contained in the mark. *In re Wada,* 194 F.3d at 1300, 52 USPQ2d at 1540; *In re Societe Generale Des Eaux Minerales De Vittel, S.A.,* 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed.Cir.1987). However, if the public would not reasonably associate the goods with the geographic location indicated by the mark, "the public is not deceived and the mark is accordingly not geographically deceptively misdescriptive." *In re Nantucket,* 677 F.2d 95, 99, 213 USPQ 889, 892 (CCPA 1982). The examiner has the initial burden of submitting sufficient evidence to establish this goods/place association. The applicant may rebut this showing with additional evidence establishing that the public would not actually believe the goods derive from the geographic location identified by the mark.

■ Relying primarily on a gazetteer and an encyclopedia, the examiner established that Venice, Italy is known for glass, lace, art objects, jewelry, cotton and silk textiles, printing, and publishing. Such evidence is sufficient to establish a *prima facie* goods/place association. *In re Loew's,* 769 F.2d at 768, 226 USPQ at 868 (finding a gazetteer adequate to show that the public would associate tobacco with Durango, Mexico); *In re Nantucket,* 677 F.2d at 106, 213 USPQ at 898 (Nies, J., concurring) (suggesting that telephone directories would be sufficient to establish that goods are available in a given location). We therefore agree with the Board that the examiner provided evidence to establish a *prima facie* goods/place association between Venice, Italy and the goods listed.

■ In an effort to rebut this goods/place association, Save Venice submitted a declaration from its executive director, who asserted that she knew from personal experience that none of the applicant's goods were manufactured or sold in Venice, Italy. The Board rejected this evidence as self-serving and unrepresentative of ordinary United States consumers. Moreover, the Board stated that it "strain[ed] credulity" when the declarant asserted that none of applicant's identified goods could be purchased in Venice. Credibility determinations and weighting of evidence are the province of the PTO and the Board as finders of fact. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Refac Int'l v. Lotus Dev. Corp.,* 81 F.3d 1576, 1582, 38 USPQ2d 1665, 1670 (Fed.Cir.1996). The Board did not abuse its discretion by rejecting the executive director's declaration as biased, unrepresentative of the relevant public's perceptions, and not credible. Consequently, the Board correctly determined that the applicant failed to rebut the examiner's *prima facie* showing of a goods/place association between Venice, Italy and the enumerated goods.

Given the substantial evidence available showing that Venice, Italy is known for glass, lace, art objects, jewelry, cotton and silk textiles, printing and publishing, the Board applied the goods/place association test to applicant's goods in two distinct groups—(1) those identical to traditional Venetian products, and (2) those related to such products. For the first group, the Board determined that consumers would make a direct goods/place association between many of applicant's goods and Venice, Italy. In particular, the Board determined that the applicant's decorative items and tableware made of precious metals were indistinguishable from Venice's association with "art objects," applicant's textile goods overlapped Venice's "cotton and silk textiles" industries, and applicant's art reproductions would fall within Venice's "art objects" and "printing." We affirm the Board's factual findings based on substantial evidence of a direct goods/place association for these products.

For the remainder of Save Venice's goods, the Board acknowledged that there was no evidence of a direct goods/place association between Venice, Italy and such products. Nevertheless, the Board found that this second group of the applicant's goods reflected "product types, decorative themes and material compositions" that consumers would "associate" with Venice. In effect, the Board applied the "related goods" test to geographic marks. The related goods test measures whether a reasonably prudent consumer would believe that non-competitive but related goods sold under similar marks derive from the same source, or are affiliated with, connected with, or sponsored by the same trademark owner. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390 (Fed.Cir.1983); *Yale Elec. Corp. v. Robertson*, 26 F.2d 972 (2d Cir.1928). The PTO and this court apply the related goods test to refuse registration when a mark so resembles a previously registered mark or one used in commerce that consumers are likely to believe that the applicant's related goods or services come from the same source, are affiliated with, connected with, or sponsored by the owner of the previous mark or name. 15 U.S.C. § 1052(d) (1994 & Supp. V 1999); *Nina Ricci, S.A.R.L. v. E.T.F. Enters.*, 889 F.2d 1070, 12 USPQ2d 1901 (Fed.Cir.1989); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed.Cir.1984); 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:63 (4th ed. 1997).

Whether the related goods test is an appropriate test for trademark registrability involves interpretation of the Lanham Act. As such, the validity of the Board's adaptation of the related goods test to geographic marks is a question of law, which this court reviews *de novo*. *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir. 2000). Therefore, we consider without deference to the Board whether the related goods test is applicable to geographic marks.

In the modern marketing context, geographic regions that are noted for certain products or services actively promote and adapt their specialties to fit changing consumer needs. Thus we see no reason to believe that a modern merchant of Venice would not expand on the traditional Venetian products listed by the Board, to begin marketing products or services related to such goods. Similarly, from the consumer's perspective, we also find no reason to believe that the public strictly limits its association of a place to the geographic region's traditional products or services. Because we consider that consumers may assume that geographic regions, like other commercial actors, are likely to expand from their traditional goods or services into related goods or services, we hold that the registrability of a geographic mark may be measured against the public's association of that region with both its traditional goods and any related goods or services that the public is likely to believe originate there. The essence of the test is whether consumers are likely to be confused by the source of the related goods identified by a distinctive geographic mark.

In its application of the "related goods" test, the Board found that many of applicant's goods "reflect product types, decorative themes and material compositions" associated with the city of Venice, Italy. As a result, the Board concluded that consumers would make a goods/place association between Venice, Italy and applicant's related goods. We agree with the Board that certain derivative "related goods" carrying a distinctive geographic mark would likely confuse consumers as to the source of the "related goods."

## CONCLUSION

Relying on substantial evidence, the Board found that applicant's composite mark was primarily geographic and that consumers viewing the mark would mistakenly believe the goods originated in Venice, Italy. Therefore, the refusal to register applicant's mark on the grounds that it is primarily geographically deceptively misdescriptive is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.