**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**
4/3/02                                                                                  Paper No. 17
csl

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re Best Software, Inc.

Serial No. 75/496,422

_____

Marsha G. Gentner and Leesa N. Weiss of Jacobson Holman PLLC for applicant.

Carol A. Spils, Trademark Examining Attorney, Law Office 101 (Jerry Price, Managing Attorney).

_____

Before Simms, Seeherman and Chapman, Administrative Trademark Judges.

Opinion by Simms, Administrative Trademark Judge:

Best Software, Inc. (applicant), a Virginia corporation, has appealed from the final refusal of the Trademark Examining Attorney to register the mark BEST! IMPERATIV HRMS ("HRMS" disclaimed) for computer software for human resource, payroll, W-2 and tax processing and employee management.[1]

---

[1] Application Ser. No. 75/496,422, filed June 3, 1998, based upon applicant's bona fide intention to use the mark in commerce. The letters have been disclaimed because the letters are an initialism for the subject matter of applicant's software—-human resource management system. In the application, applicant claims ownership of Registration No. 1,911,151.

The Examining Attorney has made final her requirement for a disclaimer of the word "BEST" apart from the mark as shown.  Applicant and the Examining Attorney have submitted briefs but no oral hearing has been requested.

Relying upon a dictionary definition[2] and copies of third-party registrations, the Examining Attorney maintains that the word "BEST" is merely descriptive of applicant's goods under Section 2(e)(1) of the Act, 15 USC §1052(e)(1), and should be disclaimed under Section 6, 15 USC §1056. The Examining Attorney argues that "BEST" is a laudatory word which attributes quality or excellence to applicant's goods, and that this word is nondistinctive and unregistrable without proof of acquired distinctiveness.

The Examining Attorney notes that this word has been disclaimed in applicant's Registration No. 1,374,606, issued December 10, 1985, covering computer programs recorded on diskettes, for the mark BP BEST PROGRAMS "THE QUALITY SOFTWARE COMPANY."  The Examining Attorney has also made of record numerous third-party registrations wherein the word "BEST" has been disclaimed.  These registrations cover such marks as BEST INTERNET COMMUNICATIONS, COMPUTER CITY AMERICA'S BEST COMPUTERS, PAINTER'S BEST, THE BEST OF

---

[2] "Surpassing all others in excellence, achievement, or quality, most excellent…" American Heritage Dictionary of the English Language Third Edition (1992).

2

THE TWENTIETH CENTURY, SIMON SYSTEMS – SIMPLY THE BEST!, QUALITY SERVICE CONTRACTORS QSC TRUST THE NATION'S BEST, BEST VANTAGE, BEST ELECTRONIC SECURITY TEAM B.E.S.T., BEST TV and design, BERRY BEST SERVICES and others.  The Examining Attorney has also relied upon the Board's recent decision *In re Best Software Inc.,* 58 USPQ2d 1314 (TTAB 2001), which we shall discuss in more detail below.

Applicant, on the other hand, maintains that the disclaimer requirement is inappropriate because the word "BEST" is not used to describe any real or specific item or characteristic of applicant's goods.  Further, applicant argues that embedded in its mark is the exclamation mark "!", so that BEST! creates a unitary commercial impression. With respect to its ´606 registration, where the words "BEST PROGRAMS" were disclaimed, applicant argues that that mark is different from the mark presented herein and that, under Section 6(b), a disclaimer should not prejudice or affect applicant's rights in the disclaimed matter.

Applicant also places strong reliance upon its ownership of Principal Register Registration No. 1,911,151, issued August 15, 1995, Sections 8 and 15 affidavits accepted and acknowledged, respectively, for the mark "BEST!" without any disclaimer or without any claim of acquired distinctiveness.  That registration issued for

such goods as computer programs for accounting, tax preparation, generating office reports and manuals, electronic filing and facsimile transmission, human resource management, financial management, computer network management, and for office administration and file management.  Because a Section 15 affidavit has now been filed and acknowledged, applicant argues that this registration is now conclusive evidence of the validity of that registration as well as applicant's exclusive right to use the registered mark BEST! in commerce.  According to applicant, this registered mark is identical to part of the mark herein sought to be registered and the registration encompasses the same goods as those in this application (computer software for human resource, payroll, W-2 and tax processing and employee management).  In this regard, applicant argues that "employee management" computer software is within the scope of the prior registration. Relying upon *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 224 USPQ 327 (1985), discussed more fully below, applicant appears to argue that it is improper for the Examining Attorney to require a disclaimer herein because its registration cannot now be attacked on the basis of mere descriptiveness.

Finally, applicant, like the Examining Attorney, also made of record numerous third-party registrations issued on the Principal Register. In these registrations, however, the word "BEST" was not disclaimed, and the registrations were not issued with a claim of acquired distinctiveness. Some of these registered marks are: DISCOVER YOUR BEST, BEST BUDDIES, STRICTLY THE BEST, TEST WITH THE BEST, BEST THING SINCE BUTTER, BOUND TO BE THE BEST, TRADITIONALLY THE BEST, THE BEST SPREAD FROM TOAST TO TOAST, THE BEST FOR LAST, EARL GREY'S BEST, DIETER'S BEST, NATURALLY THE BEST, and BEST BREED.

With respect to these third-party registrations, it is the Examining Attorney's position that many of them are for slogans or unitary terms wherein no disclaimers are required. In response to applicant's reliance on the ´151 registration, the Examining Attorney argues that the goods herein are different from the goods in that registration and that applicant's computer software content is broader in some instances and different in others in this application. Examining Attorney's brief, 9. Furthermore, decisions of other Examining Attorneys in registering different marks are without evidentiary value and are not binding on the office, the Examining Attorney argues. She maintains that each case must be decided on its own facts.

Upon careful consideration of this record and the arguments of the attorneys, we conclude that the word "BEST" in applicant's mark is merely descriptive, in a laudatory sense, of applicant's computer software and must be disclaimed, in the absence of a showing of acquired distinctiveness.

In *In re Boston Beer Co. L.P,* 198 F.3d 1370, 53 USPQ2d 1056, 1058 (Fed. Cir. 1999), in determining the registrability of the slogan "THE BEST BEER IN AMERICA," the Court of Appeals for the Federal Circuit held that this phrase was "so highly laudatory and descriptive as to be incapable of acquiring distinctiveness as a trademark…. [I]t is so highly laudatory and descriptive of the qualities of its product that the slogan does not and could not function as a trademark to distinguish Boston Beer's goods and serve as an indication of origin".

We also note what we said earlier in *In re Best Software, supra,* at 1317:

> Concerning the issue of mere descriptiveness, for the reasons expressed by the Examining Attorney, we believe that the word[] "BEST"… [is a] merely descriptive laudatory word[] which should be disclaimed.  As presented in applicant's marks sought to be registered, [this word has] merely descriptive significance, indicating high quality or importance.

6

> [It is] unregistrable without a showing
> of acquired distinctiveness…

See also *In re Nett Designs, Inc.,* 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001)("THE ULTIMATE BIKE RACK" held a "laudatory descriptive phrase"); *The Hoover Co. v. Royal Appliance Mfg. Co.,* 238 F.3d 1357, 57 USPQ2d 1720 (Fed. Cir. 2001)("Number One in Floorcare" held a "generally laudatory phrase, and thus… not inherently distinctive"); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 183 USPQ 666 (SDNY 1974)(EXQUISITE); *In re Consolidated Cigar Co.,* 35 USPQ2d 1290 (TTAB 1995)(SUPER BUY); *In re Inter-State Oil Co.,* 219 USPQ 1229 (TTAB 1983)(PREFERRED); and *In re Wileswood, Inc.,* 201 USPQ 400 (TTAB 1978)(AMERICA'S BEST POPCORN! and AMERICA'S FAVORITE POPCORN!).

Concerning applicant's argument regarding its ownership of the incontestable '151 registration, it is of course true that under Section 15 of the Act a registrant's exclusive right to use a mark in commerce on or in connection with the goods or services covered by the registration can become incontestable. Section 15 provides, in part, as follows:

> Except on a ground for which application
> to cancel may be filed at any time under
> paragraphs (3) and (5) of section 1064
> of this title… the right of the registrant

> to use such registered mark in commerce
> for the goods or services on or in connection
> with which such registered mark has
> been in continuous use for five consecutive
> years subsequent to the date of such
> registration and is still in use in commerce,
> shall be incontestable…

Thus, the statute clearly states that the incontestability provided applies specifically to the <u>use</u> of the registered mark, rather than registration. A review of the relevant legal authorities makes this clear, as well as the fact that even the ownership of an incontestable registration does not allow an applicant to obtain, by that fact alone, another registration for the same or similar mark for somewhat different goods or services.

In *Park 'N Fly, supra,* the owner of an incontestable registration for the mark PARK 'N FLY sued an alleged infringer who was using the mark DOLLAR PARK AND FLY. The defendant argued that the mark PARK 'N FLY was merely descriptive and therefore unenforceable. The Supreme Court disagreed, holding that the owner of a registered mark may rely on the incontestable status of its registration under Section 15 to enjoin infringement by a third party, and that an incontestable registration cannot be challenged by a party on the ground that the mark is merely descriptive.

In *In re Loew's Theatres, Inc.*, 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985), the applicant claimed that its

8

incontestable registration for virtually the same mark ("DURANGOS" vs. "DURANGO") for closely related goods (cigars vs. chewing tobacco) precluded a refusal of its subsequent application as primarily geographically deceptively misdescriptive. The Court disagreed, holding that each application must be evaluated separately, and further stating that the statute did not provide "a right *ipso facto* to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration."

Also, in *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987), the Court stated that, "The benefits of incontestability are no more than that 'the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce.' …The only thing that becomes incontestable is the right of the registrant to *use* the mark for the goods or services for which it is registered (emphasis added)." The Court recognized that "ownership of a registration does not of itself authorize the grant of another registration for different goods. Each application for registration must be considered on its own merits." *Id.* at 1142.

And in *In re Save Venice New York Inc.,* 259 F.3d 1346, 59 USPQ2d 1778 (Fed. Cir. 2001), the Court recently rejected an

9

argument that registration should be permitted because of

applicant's ownership of an incontestable registration, saying,

at 57 USPQ2d 1783:

> A registered mark is incontestable only in the
> form registered and for the goods or services
> claimed. *See In re Merrill Lynch…*(holding
> applicant's incontestable registration of a
> service mark for "cash management account" did
> not automatically entitle applicant to
> registration of that mark for broader financial
> services)*; In re Bose Corp.*, 772 F.2d 866, 873,
> 227 USPQ 1, 6-7 (Fed. Cir. 1985).  A registered
> mark on goods other than those previously
> registered carries no presumption of
> distinctiveness.  *In re Loew's…*(holding
> incontestable mark DURANGO for cigars
> insufficient to establish distinctiveness of
> DURANGO for chewing tobacco).  Here, the proposed
> composite mark is an entirely different mark from
> SAVE VENICE standing alone, and is used on
> entirely different goods from those services
> previously registered under the SAVE VENICE mark.
> Because the incontestable service mark SAVE
> VENICE used for fundraising services carries no
> presumptive weight within this composite mark as
> applied to the nine international classes of
> consumer goods at issue, we therefore turn to the
> Board's evaluation of the graphic and linguistic
> strength of this element.

The Board, when faced with the issue of incontestability in

appeals, has generally held that the incontestable status of a

prior registration does not alter the analysis for

registrability in a later application for a similar mark.  In *In

re BankAmerica Corporation*, 231 USPQ 873 (TTAB 1986), the

Examining Attorney refused registration under Section 2(e).  In

response, applicant argued that it owned seven registrations for

10

the same mark for related services, all of which were incontestable under Section 15 (the first three had been issued under Section 2(f), but the most recent four were not). Applicant further argued that the holding in *Park 'N Fly* prevented Examining Attorneys from refusing to register the same or virtually the same mark. However, the Board disagreed and affirmed the refusal, saying, "This Office cannot and should not be barred from examining the registrability of a mark when an applicant seeks to register it for additional goods or services… The cases are legion holding that each application for registration of a mark for particular goods or services must be separately evaluated." *Id.* at 875-76, and cases cited therein.

Similarly, in *Strang Corp. v. The Stouffer Corp.*, 16 USPQ2d 1309 (TTAB 1990), the Board held that Section 15 has no application to a cancellation proceeding. "Section 14 and Section 15 speak to different purposes, Section 14 being in effect a five year time limit barring certain attacks on a *registration*, while Section 15 provides incontestable rights of *use*." *Id.* at 1311.

And in *In re Best Software, supra,* at 1317, the Board earlier dealt with applicant's arguments concerning its ownership of this same registration, which was five years old at the time of decision but for which the Section 15 affidavit or declaration had not yet been processed. The

11

Board relied on much of the same authority discussed above, and also cited *In re Sunmarks Inc.,* 32 USPQ2d 1470, 1472 (TTAB 1994)("The cases are legion holding that each application for registration of a mark for particular goods or services must be separately evaluated…. Section 20 of the Trademark Act…gives the Board the authority and duty to decide an appeal from an adverse final decision of the Examining Attorney. This duty may not be delegated by adoption of conclusions reached by Examining Attorneys on different records. Suffice it to say that each case must be decided on its own merits based on the evidence of record. We obviously are not privy to the record in the files of the registered marks and, in any event, the issuance of a registration(s) by an Examining Attorney cannot control the result of another case.") *See also In re Bose Corp.*, 772 F.2d 866, 227 USPQ 1, 7 n. 5 (Fed. Cir. 1985)(incontestable status of registration for one speaker design does not establish non-functionality of another speaker design with shared feature); and *In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564 (TTAB 1988) (Examining Attorney may refuse registration on the ground that a mark is primarily merely a surname even if applicant owns incontestable registration of same mark for unrelated goods). Compare *In re American Sail Training Association*,

230 USPQ 879, 880 (TTAB 1986), where the Board held that an Examining Attorney may not require a disclaimer of "TALL SHIPS" in an application for registration of the mark RETURN OF THE TALL SHIPS, where applicant owns an incontestable registration for the mark TALL SHIPS covering identical services. There, the Board stated that the matter required to be disclaimed was "identical to the subject matter of applicant's incontestable registration," and that "the services described in applicant's application are identical to those recited in the prior incontestable registration."

In sum, ownership of an incontestable registration does not give the applicant a right to register the same or similar mark for different goods or services, even if they are closely related to the goods or services set forth in the incontestable registration. Here, this application seeks registration of a different mark--BEST! IMPERATIV HRMS--with a different commercial impression from the mark in the prior registration--BEST! per se-—for goods which, although similar, are nevertheless somewhat different. Moreover, as noted above, each case must be decided on its own merits. See also *In re Nett Designs, supra,* and *In re Owens-Corning Fiberglas Corp.,* 774 F.2d 1116, 227 USPQ 417, 424 (Fed. Cir. 1985). Finally, we have given little weight

to the numerous third-party registrations submitted by both sides.  *In re Nett Designs, supra* ("Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court.")

Decision:  The requirement for a disclaimer is affirmed.  Applicant is allowed until 30 days in which to submit an appropriate disclaimer.  If applicant submits the required disclaimer, it will be entered, the refusal to register will be set aside, and the application will be forwarded for publication.