THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

Mailed:  December 11, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———————

**Trademark Trial and Appeal Board**

———————

In re The Outdoor Recreation Group

———————

Serial No. 76570321

———————

Mark S. Bicks of Roylance Abrams Berdo & Goodman for The Outdoor Recreation Group.

Martha L. Fromm, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).

———————

Before Drost, Walsh and Cataldo,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

The Outdoor Recreation Group, a California corporation, has filed an application, as amended, to register on the Principal Register the mark OUTDOOR PRODUCTS in standard character form, with a claim of acquired distinctiveness under Section 2(f) of the Trademark Act as to OUTDOOR, for the following goods[1]:

———————————

[1]  Application Serial No. 76570321 was filed on January 16, 2004 reciting September 1974 as a date of first use of the mark anywhere and in commerce on both classes of goods.  Applicant claims ownership of Registration Nos. 1472288 and 2949243, and

> duffle bags, backpacks, tote bags, soft packs comprised of backpacks or hikers' bags constructed of soft material which packs do not have a rigid frame for supporting the bag, adjustable belly bands used for backpacks, shoulder pad straps and accessory bands and straps sold separately from the bags heretofore mentioned, fanny packs, shoulder bags and belt pouches,

in International Class 18; and

> clothing, consisting of down booties, ponchos, gaiters which are protective, covers for footwear, chaps, parkas, pants, jackets and rain suits,

in International Class 25.[2]

The examining attorney has refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that the proposed mark is generic and thus incapable of identifying applicant's goods and distinguishing them from those of others; or, in the alternative, that the proposed mark is merely descriptive and that applicant has made an insufficient showing that the mark has acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. §1052(f).  When the refusal was made final, applicant appealed.  Applicant and the examining attorney have filed briefs on the issue under appeal.

---

disclaims the exclusive right to use "PRODUCTS" apart from the mark as shown.

Applicant argues that it is the owner of Registration No. 1472288[3] for the mark shown below



for "fanny packs, back packs, duffle bags, shoulder bags and belt pouches," in International Class 18, and "parkas, pants, jackets, rain suits, ponchos, chaps and gaiters," in International Class 25; that its Registration No. 1472288 is incontestable; and that in refusing registration of the involved application for essentially the same mark reciting essentially identical goods, the examining attorney is making an impermissible collateral attack on applicant's incontestable registration.  Applicant further argues that it is the owner of Registration No. 2949243[4] for the mark shown below

---

[2] We note that the mark in the involved application was the subject of applicant's expired Registration No. 1220897.

[3] Registration No. 1472288 issued on January 12, 1988 with a claim of acquired distinctiveness under Section 2(f) in part as to "OUTDOOR" and reciting February 9, 1987 as a date of first use of the mark anywhere and in commerce on both classes of goods, and with a disclaimer of the exclusive right to use "PRODUCTS" apart from the mark as shown.  Section 8 affidavit accepted; Section 15 affidavit acknowledged.

[4] Registration No. 2949243 issued on May 10, 2005 with a claim of acquired distinctiveness under Section 2(f) in part as to "OUTDOOR" and reciting October 1, 2003 as a date of first use of the mark anywhere and in commerce on the goods identified in Class 18 and January 29, 2004 as a date of first use of the mark anywhere and in commerce on the goods identified in Class 25, and



for "duffle bags, backpacks, tote bags, soft packs comprised of backpacks or hikers' bags constructed of soft material which packs do not have a rigid frame for supporting the bag, adjustable belly bands used for backpacks, shoulder pad straps and accessory bands and straps sold separately from the bags heretofore mentioned, fanny packs, shoulder bags and belt pouches," in International Class 18, and "clothing, consisting of down booties, ponchos, gaiters which are protective, covers for footwear, chaps, parkas, pants, jackets and rain suits," in International Class 25; that the showing of acquired distinctiveness in the application involved herein is essentially identical to that made by applicant in the application which recently matured into its Registration No. 2949243; that the examining attorney's refusals in this case are inconsistent with the Office's treatment of applicant's above noted registrations for related OUTDOOR PRODUCTS marks; that the involved mark cannot be distinguished from the marks in applicant's prior

---

with a disclaimer of the exclusive right to use "PRODUCTS" apart from the mark as shown.

4

registrations based on the addition of a design component; and that the involved application cannot be distinguished from applicant's prior registrations based upon differences in the identifications of goods. Applicant further argues that the examining attorney's evidence of genericness comprises infringing and improper uses of applicant's mark; that such evidence thus does not form a proper basis for a genericness refusal; that applicant's extensive and continuous use of the OUTDOOR PRODUCTS mark for over 30 years provides clear evidence of acquired distinctiveness; and that as a result of long use of the mark by applicant, the relevant purchasing public has come to understand that OUTDOOR PRODUCTS refers to applicant as the source of its goods.

The examining attorney maintains that applicant's proposed mark is a generic designation for its goods. In particular, the examining attorney argues that the evidence of record demonstrates that OUTDOOR PRODUCTS is recognized as the name of a class of goods including those identified in the involved application; that the relevant public has a need to use, and already uses, OUTDOOR PRODUCTS to designate such goods; and that applicant has failed to rebut the evidence of genericness made of record with its own evidence of trademark use or recognition by others.

5

The examining attorney further argues that both the mark involved herein and the goods identified thereby differ from those in applicant's prior registrations; and that, as a result, the refusal to register the involved mark is not inconsistent with the actions of prior examining attorneys; that for the same reasons, the refusal to register the involved mark does not constitute a collateral attack upon applicant's prior, incontestable, registration.  The examining attorney argues in addition that in the event the proposed mark is not found to be generic, applicant has failed to make a sufficient showing that the merely descriptive term OUTDOOR PRODUCTS has acquired distinctiveness as applied to the recited goods; that applicant relies upon length of use alone in support of its claim of acquired distinctiveness; and that, given the examining attorney's evidence of genericness, applicant was required to submit evidence demonstrating that the involved mark has acquired distinctiveness.  In support of the refusal, the examining attorney has made of record articles from the Lexis/Nexis electronic database as well as advertisements retrieved from Internet web pages.  Excerpts from these articles and web pages follow (emphasis added):

> Sportsman's Warehouse to open store in New Berlin
> next month….The 61,000-square-foot store will

sell **outdoor products**, including gear, **clothing** and footwear.
(*Milwaukee Journal Sentinel (Wisconsin)* September 30, 2004)

Here is a sample of women-specific **outdoor products** available online or at the company's stores:  The REI Venus women's **backpack** is a new internal-frame all-season backpack….
(*The Daily News of Los Angeles* June 3, 2004)

The company literally grew one brand at a time. In the **outdoor products** category, the **backpack** is the center of the universe, ranking right beside the tent in popularity.
(*PRIMEDIA Business Magazines & Media Inc.* June 1, 2004)

Outside Buyer's Guide has selected a **bag** made by Red Oxx Manufacturing of Billings as one of this year's 15 best **outdoor products**.  The competition wasn't a beauty contest either.
(*Billings Gazette* April 15, 2004)

…The company's recently released Kajun Kameaux line of **outdoor products** is billed as "the first realistic evergreen concealment system."
…Most camo **clothing** currently on the market is done in brown, gray or yellow to blend with hardwoods found in most of the country…"We're only trying to bring in innovative **outdoor products** – we're not trying to have 50 products to offer….
(*The Times (Shreveport, LA)* February 1, 2004)

Here's a profile of a useful **outdoor product:**
Name:  One **Jacket**
(*The Bellingham Herald* January 21, 2004)

Its Fall 2003 catalog offers an array of **outdoor products** in its 555 glossy pages, including hunting rifles, **jackets** and snake-proof chaps. Some of Cabela's stores are much larger than Wal-Mart Supercenters.
(*Reno Gazette-Journal* September 26, 2003)

…In 1974 by S.C. Johnson Wax, which created the division that today owns Old Town and a handful of familiar **outdoor products** including Eureka tents, Camp Trails **backpacks** and Minn Kota electric motors….
(*Portland Press Herald (Maine)* September 7, 2003)

"Although all the major **pack** brands are addressing the demand swell in women's-specific **outdoor products** by offering a few women's **packs** in the collection, we believe that we are the first brand to be dedicated only to women's **bags** and packs for the outdoor market," comments Ruzic….
(*Sporting Goods Business*, August 1, 2003)

NAPLES – If you were ever a Boy Scout, that trusty canvas **pack** you lugged on camping trips came from Diamond Brand, the **outdoor products** manufacturer based here on U.S. 64.
(*The Asheville Citizen-Times* July 28, 2003)

**OUTDOOR PRODUCTS** MARKET: STEADY GROWTH
North Palm Beach, Florida – March 25, 1999 – The market for outdoor recreation products grew by two percent in 1998, with manufacturer's sales (at wholesale) of camping, hiking, backpacking, and other **outdoor products** totaling $1.26 billion dollars. Good weather throughout the summer and a warm fall, combined with an ample supply of affordable **backpacks** and tents for the consumer, are reasons for the good year experienced by the industry.
(www.sgma.com/press/1999/press)

"The Field & Stream® license offers PremiumWear several exciting opportunities. First, we enter the outdoor lifestyle apparel segment with one of the most recognized brands in **outdoor products**. Second, through this license, we expand our product offering into headwear, rainwear, canvas sport **bags** and totes, and children's apparel," said David E. Berg, Premiumwear's President and Chief Executive Officer…The Field & Stream® brand can be found in stores nationwide on a variety of **outdoor products**, including outerwear, pocket knives, watches and technical hunting apparel.

(www.prnewswire.com)

ABOUT WILD RIVER
Our Store:  9,000 square feet of the best in
**outdoor products** available.  Hundreds of kayaks
and canoes, camping gear, rock climbing gear, and
**clothing** all under one roof.
(www.wildriveroutfitters.com)

Browse thousands of **outdoor products** from top
brand names like The North Face, DaKine,
Arc'teryx, Suunto, Oakley, Burton and Nixon…As
far as *your* recreational or hardcore gear is
concerned, it is our intention to help you find
what you need….The top name brands for skis,
paddles, watches, outdoor **clothing**, GPS
accessories, camping equipment, travel
necessities and more are listed below.  Please
enjoy our selections.
(www.gravityfed.com/outoor-gear.html)

…Our designers strive to challenge assumptions
about how **outdoor products** should be built and
radically improve the status quo.  We have
created ground-breaking construction technology,
developed paradigm-shifting designs and been the
catalyst to major new fabric technology.  We have
cemented our reputation at the pinnacle of the
outdoor world by producing the most innovative
and superbly crafted **packs**, harnesses and apparel
available.
(www.acrteryx.com)

…Sierra designs, a technical leader in developing
innovative **outdoor products** including tents,
sleeping **bags**, and **clothing**, recently became the
first manufacturer to offer a free six-month
Trail Finder tm subscription with the purchase of
any Sierra Designs sleeping bag.
(www.outdoorindustry.org)

Marmot is a 26 year old performance **outdoor
products** company.  We make outdoor clothing and
equipment simpler, easier to use, more
comfortable, more durable, lighter weight, and,
at the same time, a better value.
(www.mountainxlinks.com)

Beyond Fleece is an **outdoor products** company that specializes in producing custom-made garments, including soft shell **pants** and **jackets**, fleece vests, and fleece **pants** and **jackets**. (www.worldclassgear.com)

Fitness equipment, skis, snowshoes, tennis racquets, Nordic hiking poles, basketball accessories, sun glasses, performance apparel, and hiking gear.  That represented a list of the wide variety of sport and **outdoor products** on display at TrendCast (June 16; Marriott Marquis Hotel; New York, NY) where 20 brands showcased their latest product introductions for the New York-based local and national media. (www.sgma.com)

…**Outdoor products** manufacturers understand the need for packing more than a bottle of water into the woods, and over the years they have developed numerous specialty packs to accommodate a wide range of outdoor activities…. (outdoorstore.espn.com)

…But women are far from a soft spot in the outdoor industry.  On an [sic] August 5, 2003, Leisure Trends Group released a report showing women's-specific **outdoor product** sales increased 18.35 percent in dollars, and 25.5 percent in units sold for the second quarter of 2003. According to the report, dollar sales of outdoor sportswear grew 38 percent and **backpacks** increased 19 percent over the same period in 2002.  Apparel accessories soared 44 percent and outerwear jumped 34 percent. (www.outdoorindustry.org)

In addition, the examining attorney submitted with her December 13, 2004 Office action dictionary definitions of "outdoor" and "product."  According to these definitions, "outdoor" may be defined, *inter alia*, as "located, suited for, or taking place in the open air, 'outdoor clothes,

10

'badminton and other outdoor games;'" and "product" may be defined, *inter alia*, as "an article or substance manufactured for sale."[5]

A mark is a generic name if it refers to the class, genus or category of goods and/or services on or in connection with which it is used. *See In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001), citing *H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528 (Fed. Cir. 1986). The test for determining whether a mark is generic is its primary significance to the relevant public. *See* Section 14(3) of the Act. *See also In re American Fertility Society*, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999); *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551 (Fed. Cir. 1991); and *H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., supra*. The examining attorney has the burden of establishing by clear evidence that a mark is generic and thus unregistrable. *See In re Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987). Evidence of the relevant public's understanding of a term may be obtained from any competent

---

[5] The examining attorney relies upon Ultralingua.net and AskOxford.com, respectively, for these definitions.

source, including testimony, surveys, dictionaries, trade journals, newspapers, and other publications. *See In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1985).

In the case of *In re Dial-A-Mattress Operating Corp.*, *supra*, 1-888-M-A-T-R-E-S-S for "telephone shop-at-home retail services in the field of mattresses," the court further clarified the test as follows (*Id.* at 1810):

> Where a term is a "compound word" (such as "Screenwipe"), the Director may satisfy his burden of proving it generic by producing evidence that each of the constituent words is generic, and that "the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound." *In re Gould Paper Corp.*, 834 F.2d 1017, 1018, 5 USPQ2d 1110, 1110 (Fed. Cir. 1987). However, where the proposed mark is a phrase (such as "Society for Reproductive Medicine"), the board "cannot simply cite definitions and generic uses of the constituent terms of a mark"; it must conduct an inquiry into "the meaning of the disputed phrase as a whole." *In re The Am. Fertility Soc'y*, 188 F.3d at 1347, 51 USPQ2d at 1836. The *In re Gould* test is applicable only to "compound terms formed by the union of words" where the public understands the individual terms to be generic for a genus of goods or services, and the joining of the individual terms into one compound word lends "no additional meaning to the term." *Id*. at 1348-49, 51 USPQ2d at 1837.

The court concluded that "1-888-M-A-T-R-E-S-S," as a mnemonic formed by the union of a series of numbers and a word, bears closer conceptual resemblance to a phrase than a

compound word, and the court reiterated that the PTO must produce evidence of the meaning the relevant purchasing public accords to the proposed mnemonic mark "as a whole." In concluding that there was not substantial evidence that the term is generic, the court added that the term is not literally a genus or class name nor does it "immediately and unequivocally" describe the service at issue.

We find that, in this case, OUTDOOR PRODUCTS is somewhat more analogous to the phrase considered by the court in *American Fertility* than it is to the compound word considered in *Gould*. That is to say, unlike the term SCREENWIPE contemplated by the Federal Circuit in *In re Gould, supra,* OUTDOOR PRODUCTS appears to be less of a compound word formed by the union of OUTDOOR and PRODUCTS than a phrase comprising its constituent words. Thus, dictionary definitions alone cannot support a refusal to register the proposed mark. However, we need not determine whether definitions of the constituent terms would be sufficient in view of the fact that evidence made of record by the examining attorney establishes that the wording "outdoor products" is the name of a class of goods. Specifically, articles and advertisements made of record by the examining attorney clearly establish that "outdoor products" are wearing apparel and gear, including packs,

bags, and accessories therefor, that are worn and used by persons engaged in outdoor activities. Further, and contrary to applicant's assertions, none of the materials made of record by the examining attorney appears to point to applicant, or any other entity, as a single source of the "outdoor products" discussed therein. Indeed, many of the articles and advertisements make reference to one or more trade names or trademarks as source indicators for various products. However, in none of the articles and advertisements does the term "outdoor products" appear in such a way as to suggest misuse either of applicant's, or any other party's, proposed mark. As such, this is not a case in which the record contains a mix of trademark and generic uses of a proposed mark. *Cf. In re Merrill Lynch, Pierce, Fenner and Smith Inc., supra.*

In addition, applicant has failed to introduce evidence sufficient to rebut the examining attorney's evidence of genericness. Instead, applicant merely relies upon the asserted dates of use of its proposed mark since September 1974 and ownership of its prior registrations. As such, the evidence submitted by applicant in this case is insufficient to rebut the examining attorney's strong prima facie case of genericness. *Cf. In re American Online, Inc.,* 77 USPQ2d 1618 (TTAB 2006). Accordingly, the

record is sufficient to establish that the relevant public would find OUTDOOR PRODUCTS a generic term denoting applicant's recited goods that are worn and used by persons engaged in outdoor activities.

Nor are we persuaded that the examining attorney's present refusal to register constitutes an impermissible collateral attack on applicant's prior, incontestable, Registration No. 1472288. We note initially that even if incontestability could limit an examining attorney's ability to refuse registration, it would not preclude a genericness refusal, which is always available as a ground for cancellation of an incontestable registration. Section 14(3) of the Act specifically permits a challenge to such a mark based on genericness. *See* 15 U.S.C. §1064(3). Further, and as noted above, the mark in Registration No. 1472288 differs from the proposed mark, OUTDOOR PRODUCTS, in the involved application in that applicant's prior registered mark appears in stylized form, incorporating a design as part of the letter "O" and an oval carrier. In addition, the involved application recites goods that are not included among the goods identified in applicant's prior, incontestable, registration. It is settled that a "registered mark is incontestable only in the form registered and for the goods or services claimed." *See In*

15

*re Save Venice New York Inc.*, 259 F.3d 1346, 59 USPQ2d 1779, 1782 (Fed. Cir. 2001), quoting *In re Merrill Lynch, Pierce, Fenner and Smith Inc., supra.* "A registered mark on goods other than those previously registered carries no presumption of distinctiveness." *Id.*, quoting *In re Loew's Theaters, Inc.,* 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985). It is further settled that "ownership of an incontestable registration does not give the applicant a right to register the same or similar mark for different goods or services, even if they are closely related to the goods or services set forth in the incontestable registration." *See In re Best Software,* 63 USPQ2d 1109, 1113 (TTAB 2002). *See also In re BankAmerica Corp.*, 231 USPQ 873 (TTAB 1986). "[E]ach application for registration of a mark for particular goods must be separately evaluated. Nothing in the statute provides a right ipso facto to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration. Nor do the PTO rules afford any greater rights." *See In re Loew's Theaters, Inc., supra.*

In this case, the proposed mark, OUTDOOR PRODUCTS, differs from the mark in applicant's incontestable registration and in addition, identifies a wider range of

16

goods in both International Classes 18 and 25. As such, and in accordance with the above authorities, we find that the examining attorney's refusal to register the involved proposed mark does not constitute a collateral attack on applicant's incontestable Registration No. 1472288.

Finally, applicant argues that the present refusal to register is inconsistent with the Office's treatment of its above prior registration as well as its Registration No. 2949243. As we have previously stated,

> the cases are legion holding that each application for registration of a mark for particular goods or services must be separately evaluated…. Section 20 of the Trademark Act…gives the Board authority and duty to decide an appeal from an adverse final decision of the Examining Attorney. This duty may not be delegated by adoption of conclusions reached by Examining Attorney's on different records. Suffice it to say that each case must be decided on its own merits based on the evidence of record. We obviously are not privy to the record in the files of the registered marks and, in any event, the issuance of a registration by an Examining Attorney cannot control the result of another case.

*In re Sunmarks Inc.*, 32 USPQ2d 1470, 1472 (TTAB 1994). *See also In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). As discussed above, the mark in applicant's Registration No. 1472288 differs from the proposed mark in this case, and identifies goods that only partially overlap. The mark in applicant's Registration

17

No. 2929243 also differs from the mark in the involved application in that the registered mark appears in stylized form and features a design that is absent from the standard character mark at issue herein. Thus, the marks in both of applicant's prior registrations contain material not present in the proposed mark at issue, and in one case identifies a narrower scope of goods. Furthermore, neither the examining attorney nor this Board is bound by the decisions of prior examining attorneys, even in cases involving related marks and/or goods. *See Id.* While uniform treatment under the Trademark Act is highly desirable, our task here is to determine, based upon the record before us, whether applicant's mark is registrable.

Therefore, we conclude that the examining attorney has met the substantial burden of establishing that OUTDOOR PRODUCTS is incapable of identifying and distinguishing the source of the identified goods. Specifically, the examining attorney has made a strong showing – which applicant has failed to rebut - that the proposed mark is now generic.

In finding that the designation OUTDOOR PRODUCTS is incapable of being a source identifier for applicant's goods, we have considered, of course, all of the evidence touching on the public perception of this designation,

including the evidence of acquired distinctiveness.  As to acquired distinctiveness, applicant has the burden to establish a prima facie case of acquired distinctiveness. *See Yamaha International Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988).

As indicated above, applicant relied upon its dates of use of the mark since September 1974 and ownership of its prior registrations, but submitted no additional evidence of acquired distinctiveness.  Applicant's long use suggests that applicant has enjoyed a degree of business success. Nonetheless, this evidence does not demonstrate that its customers have come to view the designation OUTDOOR PRODUCTS as applicant's source-identifying trademark.  *See In re Bongrain International Corp.*, 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990); and *In re Recorded Books Inc.,* 42 USPQ2d 1275 (TTAB 1997).  The issue here is the achievement of distinctiveness, and the evidence falls far short of establishing this.  Applicant's evidence is outweighed by the Lexis/Nexis and Internet evidence showing use of "outdoor products" as a generic term.  To be clear on this significant point, we emphasize that the record is completely devoid of direct evidence that the relevant classes of purchasers of applicant's goods view OUTDOOR PRODUCTS as a distinctive source indicator therefor.

19

Accordingly, even if the designation OUTDOOR PRODUCTS were found to be not generic, but merely descriptive, given the highly descriptive nature of the designation OUTDOOR PRODUCTS, we would need to see a great deal more evidence (especially in the form of direct evidence from customers) than that which applicant has submitted in order to find that the designation has become distinctive of applicant's goods.  That is to say, the greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish acquired distinctiveness.  *See Yamaha Int'l. Corp. v. Hoshino Gakki Co., supra*; and *In re Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*.  *See also*: *Restatement (Third) of Unfair Competition* (1993), Section 13, comment e:

> The sufficiency of the evidence offered to prove secondary meaning should be evaluated in light of the nature of the designation.  Highly descriptive terms, for example, are less likely to be perceived as trademarks and more likely to be useful to competing sellers than are less descriptive terms.  More substantial evidence of secondary meaning thus will ordinarily be required to establish their distinctiveness.  Indeed, some designations may be incapable of acquiring distinctiveness.

Applicant's contention that the evidence submitted by the examining attorney consists of infringing and improper uses of applicant's mark is not persuasive.  As shown by the record, many entities in the relevant industry use the

term "outdoor products" in a generic manner.  The multiple uses of the designation "outdoor products" show that the designation does not point to applicant or any other single entity.

In sum, the proposed mark is a common designation used in the industry to identify products such as clothing and gear used by persons engaged in outdoor activities.  The designation OUTDOOR PRODUCTS is generic and does not and could not function as a trademark to distinguish applicant's goods from those of others and serve as an indication of origin.  The designation sought to be registered should not be subject to exclusive appropriation, but rather should remain free for others in the industry to use in connection with their clothing and gear used for outdoor activities.  *See In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999).

*Decision:*  The refusal under Section 2(e)(1) of the Act on the ground that the proposed mark is generic is affirmed; and the refusal under Section 2(e)(1) of the Act on the ground that the proposed mark is merely descriptive and that applicant has made an insufficient showing that the mark has acquired distinctiveness under Trademark Act Section 2(f), likewise is affirmed.