In re CALIFORNIA INNOVATIONS, INC.

No. 02–1407.

United States Court of Appeals, Federal Circuit.

DECIDED: May 22, 2003.

Michael A. Grow, Arent Fox Kintner Plotkin & Kahn, PLLC of Washington, DC, argued for appellant. With him on the brief were Charles M. Marmelstein and Evan S. Stolove.

Henry G. Sawtelle, Associate, United States Patent and Trademark Office of Arlington, Virginia, argued for the appellee. With him on the brief were John M. Whealan, Solicitor, and Cynthia C. Lynch, Associate Solicitor.

Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

California Innovations, Inc. (CA Innovations), a Canadian-based corporation, appeals the Trademark Trial and Appeal Board's refusal to register its mark—CALIFORNIA INNOVATIONS. Citing section 2(e)(3) of the Lanham Act, 15 U.S.C. § 1052(e)(3) (2000), the Board concluded that the mark was primarily geographically deceptively misdescriptive. Because the Board applied an outdated standard in its analysis under § 1052(e)(3), this court vacates the Board's decision and remands.

## I.

CA Innovations filed an intent-to-use trademark application, Serial No. 74/650,-703, on March 23, 1995, for the composite mark CALIFORNIA INNOVATIONS and Design. The application sought registration for the following goods:

> automobile visor organizers, namely, holders for personal effects, and automobile trunk organizers for automotive accessories in International Class 12; backpacks in International Class 18; thermal insulated bags for food and beverages, thermal insulated tote bags for food or beverages, and thermal insulated wraps for cans to keep the containers cold or hot in International Class 21; and nylon, vinyl, polyester and/or leather bags for storage and storage pouches in International Class 22.

The United States Patent and Trademark Office (PTO) initially refused registration based on an alleged likelihood of confusion with some prior registrations. At the PTO's request, applicant disclaimed the CALIFORNIA component of the mark. Applicant also amended its identification and classification of goods to conform to the examiner's suggestions. Thereafter, the PTO issued a notice of publication. The mark was published for opposition on September 29, 1998. No opposition was ever filed.

In July 1999, the PTO reasserted jurisdiction over the application under 37 C.F.R. § 2.84(a) and refused registration under § 1052(e)(3), concluding that the mark was primarily geographically deceptively misdescriptive. Applicant filed a timely notice for reconsideration with the PTO and a notice of appeal to the Board in November 2000. After the PTO refused to reconsider its decision, CA Innovations renewed its appeal to the Board. On February 20, 2002, the Board upheld the PTO's refusal to register applicant's mark and concluded that the mark was primarily geographically deceptively misdescriptive.

This court reviews the Board's "legal conclusions, such as its interpretations of the Lanham Act," without deference. *In re Hiromichi Wada*, 194 F.3d 1297, 1299, 52 USPQ2d 1539, 1540 (Fed. Cir.1999). Under a proper legal standard, the Board's determination of geographic misdescription is a factual finding. *See In re Compagnie Generale Maritime*, 993 F.2d 841, 845, 26 USPQ2d 1652, 1654 (Fed. Cir.1993). This court upholds the Board's factual findings "unless they are unsupported by substantial evidence." *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000). This court has jurisdiction over this petition for review under 15 U.S.C. § 1071 (2000).

## II.

The Lanham Act addresses geographical marks in three categories. The first category, § 1052(a), identifies geographically deceptive marks:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—(a) Consists of or comprises immoral, *deceptive*, or scandalous matter; or matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute.

15 U.S.C. § 1052(a) (2000) (emphasis added). Although not expressly addressing geographical marks, § 1052(a) has traditionally been used to reject geographic marks that materially deceive the public. A mark found to be deceptive under § 1052(a) cannot receive protection under the Lanham Act. To deny a geographic

mark protection under § 1052(a), the PTO must establish that (1) the mark misrepresents or misdescribes the goods, (2) the public would likely believe the misrepresentation, and (3) the misrepresentation would materially affect the public's decision to purchase the goods. *See In re Budge Mfg. Co.*, 857 F.2d 773, 775, 8 USPQ2d 1259, 1260 (Fed.Cir.1988). This test's central point of analysis is materiality because that finding shows that the misdescription deceived the consumer. *See In re House of Windsor*, 221 USPQ 53, 56–57, 1983 WL 51833 (TTAB 1983).

The other two categories of geographic marks are (1) "primarily geographically descriptive" marks and (2) "primarily geographically deceptively misdescriptive" marks under § 1052(e). The North American Free Trade Agreement, *see* North American Free Trade Agreement, Dec. 17, 1992, art. 1712, 32 I.L.M. 605, 698 [hereinafter NAFTA], as implemented by the NAFTA Implementation Act in 1993, *see* NAFTA Implementation Act, Pub. L. No. 103–182, 107 Stat. 2057 (1993), has recently changed these two categories. Before the NAFTA changes, § 1052(e) and (f) stated:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> (e) Consists of a mark which . . .
>
> (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them.
>
> \* \* \* \* \* \*
>
> (f) Except as expressly excluded in paragraphs (a) (d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.

15 U.S.C. § 1052(e)(2) and (f) (1988). The law treated these two categories of geo-

graphic marks identically. Specifically, the PTO generally placed a "primarily geographically descriptive" or "deceptively misdescriptive" mark on the supplemental register. Upon a showing of acquired distinctiveness, these marks could qualify for the principal register.

Thus, in contrast to the permanent loss of registration rights imposed on deceptive marks under § 1052(a), pre-NAFTA § 1052(e)(2) only required a temporary denial of registration on the principal register. Upon a showing of distinctiveness, these marks could acquire a place on the principal register. *In re Dial–A–Mattress Operating Corp.*, 240 F.3d 1341, 1347, 57 USPQ2d 1807, 1812 (Fed.Cir.2001). As permitted by pre-NAFTA § 1052(f), a mark could acquire distinctiveness or "secondary meaning" by showing that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

In the pre-NAFTA era, the focus on distinctiveness overshadowed the deceptiveness aspect of § 1052(e)(2) and made it quite easy for the PTO to deny registration on the principal register to geographically deceptively misdescriptive marks under § 1052(e)(2). On the other hand, the deception requirement of § 1052(a) protected against fraud and could not be overlooked. Therefore, the PTO had significantly more difficulty denying registration based on that higher standard. *See generally* Andrew P. Vance, *Can't Get There From Here: How NAFTA and GATT Have Reduced Protection for Geographical Trademarks*, 26 Brook. J. Int'l L. 1097 (2001).

Before NAFTA, in *In re Nantucket*, 209 USPQ 868, 870, 1981 WL 48122 (TTAB 1981), the Board used a three-prong test to

detect either primarily geographically descriptive or deceptively misdescriptive marks. Under the Board's test, the only substantive inquiry was whether the mark conveyed primarily a geographical connotation. On appeal in *In re Nantucket,* this court's predecessor rejected that test:

> The board's test rests mechanistically on the one question of whether the mark is recognizable, at least to some large segment of the public, as the name of a geographical area. NANTUCKET is such. That ends the board's test. Once it is found that the mark is the name of a known place, i.e., that it has "a readily recognizable geographic meaning," the next question, whether applicant's goods do or do not come from that place, becomes irrelevant under the board's test, for if they do, the mark is "primarily geographically descriptive"; if they don't, the mark is "primarily geographically deceptively misdescriptive." Either way, the result is the same, for the mark must be denied registration on the principal register unless resort can be had to § 2(f).

*In re Nantucket, Inc.,* 677 F.2d 95, 97–98 (CCPA 1982). Thus *In re Nantucket,* for the first time, set forth a goods-place association requirement. *Id.* at 99–100. In other words, this court required a geographically deceptively misdescriptive mark to have more than merely a primary geographic connotation. Specifically, the public must also associate the goods in question with the place identified by the mark—the goods-place association requirement. However, this court did not require a showing that the goods-place association was material to the consumer's decision before rejection under § 1052(e).

In *In re Loew's Theatres, Inc.,* 769 F.2d 764, 767–69 (Fed.Cir.1985), this court expressly permitted a goods-place association without any showing that the place is "well-known" or "noted" for the goods in question. The *Loew's* court explained:

> "[I]f the place is noted for the particular goods, a mark for such goods which do not originate there is likely to be deceptive under § 2(a) and not registrable under any circumstances." *Id.* at 768, n. 6. Clarifying that pre-NAFTA § 1052(e)(2) does not require a "well-known" place, this court noted:

> The PTO's burden is simply to establish that there is a reasonable predicate for its conclusion that the public would be likely to make the particular goods/place association on which it relies.... The issue is not the fame or exclusivity of the place name, but the likelihood that a particular place will be associated with particular goods.

*Id.*

As noted, the Lanham Act itself does not expressly require different tests for geographically misleading marks. In order to implement the Lanham Act prior to the NAFTA amendments, the PTO used a low standard to reject marks for geographically deceptive misdescriptiveness under pre-NAFTA § 1052(e), which was relatively simple to meet. In contrast, the PTO required a much more demanding finding to reject for geographical deception under § 1052(a). This distinction was justified because rejection under subsection (a) was final, while rejection under pre-NAFTA subsection (e)(2) was only temporary, until the applicant could show that the mark had become distinctive. The more drastic consequence establishes the propriety of the elevated materiality test in the context of a permanent ban on registration under § 1052(a).

NAFTA and its implementing legislation obliterated the distinction between geographically deceptive marks and primarily geographically deceptively misdescriptive marks. Article 1712 of NAFTA provides:

> 1. Each party [United States, Mexico, Canada] shall provide, in respect of geo-

graphical indications, the legal means for interested persons to prevent:

(a) the use of any means in the designation or presentation of a good that indicates or suggests that the good in question originates in a territory, region or locality other than the true place of origin, in a manner that misleads the public as to the geographical origin of the good. . . .

*See* NAFTA, Dec. 17, 1992, art. 1712, 32 I.L.M. 605, 698. This treaty shifts the emphasis for geographically descriptive marks to prevention of any public deception. Accordingly, the NAFTA Act amended § 1052(e) to read:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

(e) Consists of a mark which (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them, (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive of them, except as indications of regional origin may be registrable under section 4 [15 USCS § 1054], (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them, (4) is primarily merely a surname, or (5) comprises any matter that, as a whole, is functional.

(f) Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.

15 U.S.C. § 1052(e)-(f) (2000).

Recognizing the new emphasis on prevention of public deception, the NAFTA amendments split the categories of geo-graphically descriptive and geographically deceptively misdescriptive into two subsections (subsections (e)(2) and (e)(3) respectively). Under the amended Lanham Act, subsection (e)(3)—geographically deceptive misdescription—could no longer acquire distinctiveness under subsection (f). Accordingly, marks determined to be primarily geographically deceptively misdescriptive are permanently denied registration, as are deceptive marks under § 1052(a).

■ Thus, § 1052 no longer treats geographically deceptively misdescriptive marks differently from geographically deceptive marks. Like geographically deceptive marks, the analysis for primarily geographically deceptively misdescriptive marks under § 1052(e)(3) focuses on deception of, or fraud on, the consumer. The classifications under the new § 1052 clarify that these two deceptive categories both receive permanent rejection. Accordingly, the test for rejecting a deceptively misdescriptive mark is no longer simple lack of distinctiveness, but the higher showing of deceptiveness.

The legislative history of the NAFTA Act confirms the change in standard for geographically deceptively misdescriptive marks. In a congressional record statement, which appears to be the equivalent of a committee report, the Senate Judiciary Committee acknowledges the new standard for these marks:

[T]he bill creates a distinction in subsection 2(e) of the Trademark Act between geographically "descriptive" and "misdescriptive" marks and amends subsections 2(f) and 23(a) of the Act to preclude registration of "primarily geographically deceptively misdescriptive" marks on the principal and supplemental registers, respectively. The law as it relates to "primarily geographically

descriptive" marks would remain unchanged.

139 Cong. Rec. S 16,092 (1993).

■ The amended Lanham Act gives geographically deceptively misdescriptive marks the same treatment as geographically deceptive marks under § 1052(a). Because both of these categories are subject to permanent denial of registration, the PTO may not simply rely on lack of distinctiveness to deny registration, but must make the more difficult showing of public deception. In other words, by placing geographically deceptively misdescriptive marks under subsection (e)(3) in the same fatal circumstances as deceptive marks under subsection (a), the NAFTA Act also elevated the standards for identifying those deceptive marks.

Before NAFTA, the PTO identified and denied registration to a primarily geographically deceptively misdescriptive mark with a showing that (1) the primary significance of the mark was a generally known geographic location, and (2) "the public was likely to believe the mark identified the place from which the goods originate and that the goods did not come from there." *In re Loew's*, 769 F.2d at 768. The second prong of the test represents the "goods-place association" between the mark and the goods at issue. This test raised an inference of deception based on the likelihood of a goods-place association that did not reflect the actual origin of the goods. A mere inference, however, is not enough to establish the deceptiveness that brings the harsh consequence of non-registrability under the amended Lanham Act. As noted, NAFTA and the amended Lanham Act place an emphasis on actual misleading of the public.

■ Therefore, the relatively easy burden of showing a naked goods-place association without proof that the association is material to the consumer's decision is no longer justified, because marks rejected under § 1052(e)(3) can no longer obtain registration through acquired distinctiveness under § 1052(f). To ensure a showing of deceptiveness and misleading before imposing the penalty of non-registrability, the PTO may not deny registration without a showing that the goods-place association made by the consumer is material to the consumer's decision to purchase those goods. This addition of a materiality inquiry equates this test with the elevated standard applied under § 1052(a). *See House of Windsor,* 221 USPQ at 56–57 (establishing "a 'materiality' test to distinguish marks that fall within the proscription of Section 2(e)(2) from those that fall also within the proscription of Section 2(a)"). This also properly reflects the presence of the deceptiveness criterion often overlooked in the "primarily geographically *deceptively* misdescriptive" provision of the statute.

The shift in emphasis in the standard to identify primarily geographically deceptively misdescriptive marks under § 1052(e)(3) will bring that section into harmony with § 1052(a). Both sections involve proof of deception with the consequence of non-registrability. The adherence to the pre-NAFTA standard designed to focus on distinctiveness would almost read the term "deceptively" out of § 1052(e)(3), which is the term that the NAFTA amendments to the Lanham Act has reemphasized. Accordingly, under the amended Lanham Act, both subsection (a) and subsection (e)(3) share a similar legal standard.

■ Since the NAFTA amendments, this court has dealt with two cases involving § 1052(e)(3). *Wada,* 194 F.3d 1297; *In re Save Venice New York, Inc.,* 259 F.3d 1346, 59 USPQ2d 1778 (Fed.Cir. 2001). Although neither of those cases explores the effect of the NAFTA Act on the test for determining geographically de-

ceptive misdescription, both cases satisfy the new NAFTA standard. "[I]f there is evidence that goods like applicant's or goods related to applicant's are a principal product of the geographical area named by the mark, then the deception will most likely be found material and the mark, therefore, deceptive." *House of Windsor*, 221 USPQ at 57. "[I]f the place is noted for the particular goods, a mark for such goods which do not originate there is likely to be deceptive under § 2(a) and not registrable under any circumstances." *Loew's Theatres*, 769 F.2d at 768, n. 6.

In *Save Venice*, this court affirmed the Board's refusal to register applicant's marks "THE VENICE COLLECTION" and "SAVE VENICE, INC." because of the "substantial evidence available showing that Venice, Italy is *known for* glass, lace, art objects, jewelry, cotton and silk textiles, printing and publishing." 259 F.3d at 1354 (emphasis added). Although the court in *Save Venice* did not expressly address the materiality issue, because it was not officially recognized in this context, the court emphasized that "all of the applicant's goods are associated with *traditional Venetian products.*" *Id.* at 1350 (emphasis added). The court in *Save Venice* concluded that the public would mistakenly believe they were purchasing "traditional Venetian products" because the applicant's products were "indistinguishable" from the products traditionally originating in Venice. *Id.* at 1350–54. Thus, the record in *Save Venice* satisfies the test for deception.

Similarly, in *Wada*, this court affirmed the Board's refusal to register applicant's mark "NEW YORK WAYS GALLERY" because there was "evidence that showed

... New York is *well-known* as a place where leather goods and handbags are designed and manufactured." *Wada,* 194 F.3d at 1299–1300 (emphasis added).* Again, the court in *Wada* did not expressly make a finding that the goods-place association would materially influence the consumer. However, this court noted that the public, "upon encountering goods bearing the mark NEW YORK WAYS GALLERY, would believe that the goods" originate in New York, "a world-renown fashion center ... well-known as a place where goods of this kind are designed, manufactured, or sold." *Id.* This showing that the place was not only well-known, but renowned for the products at issue supports a finding of materiality. *See House of Windsor,* 221 USPQ at 57.

■ Thus, due to the NAFTA changes in the Lanham Act, the PTO must deny registration under § 1052(e)(3) if (1) the primary significance of the mark is a generally known geographic location, (2) the consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place, and (3) the misrepresentation was a material factor in the consumer's decision.

As a result of the NAFTA changes to the Lanham Act, geographic deception is specifically dealt with in subsection (e)(3), while deception in general continues to be addressed under subsection (a). Consequently, this court anticipates that the PTO will usually address geographically deceptive marks under subsection (e)(3) of the amended Lanham Act rather than subsection (a). While there are identical legal

---

* The court in *Wada* discussed the NAFTA amendments in the context of whether an applicant could disclaim the geographic element of a mark to avoid rejection. The court affirmed the PTO's policy that a disclaimer of the geographic element of a mark will not render a geographically deceptively misdescriptive mark registrable. The court stated that such a policy "complies with Article 1712 of NAFTA." *Wada,* 194 F.3d at 1300–1301.

standards for deception in each section, subsection (e)(3) specifically involves deception involving geographic marks.

### III.

CA Innovations unequivocally states in its opening brief that its "petition seeks review only of that portion of the [Board's] decision that pertains to 'thermal insulated bags for food and beverages and thermal insulated wraps for cans'" as identified in International Class 21 in the application. Therefore, because of applicant's decision not to challenge the Board's judgment with respect to all goods other than those identified in class 21, that part of the Board's decision is not affected by this opinion.

As a preliminary issue, this court may affirm or reverse a rejection of an application with respect to only a portion of the goods identified. This court discerns no legal limitation on an appeal with respect to a portion of the goods listed in the application. In fact, the Board also perceives no legal restrictions on narrowing the issues in an application. *See In re Wielinski*, 49 USPQ2d 1754, 1998 WL 998961 (TTAB 1998) (affirming refusal to register only as to class 16 and reversing refusal to register as to all other classes); *In re Harry N. Abrams, Inc.*, 223 USPQ 832, 1984 WL 63592 (TTAB 1984) (affirming refusal to register as to class 14 and reversing refusal to register as to all remaining classes); *see also Trademark Manual of Examining Procedure* § 1403.05 (3d ed. 2002).

The parties agree that CA Innovations' goods do not originate in California. Under the first prong of the test—whether the mark's primary significance is a generally known geographic location—a composite mark such as the applicant's proposed mark must be evaluated as a whole. . . . It is not erroneous, however, for the examiner to consider the significance of each element within the composite mark in the course of evaluating the mark as a whole.

*Save Venice*, 259 F.3d at 1352 (citations omitted).

The Board found that "the word CALIFORNIA is a prominent part of applicant's mark and is not overshadowed by either the word INNOVATIONS or the design element." Although the mark may also convey the idea of a creative, laid-back lifestyle or mindset, the Board properly recognized that such an association does not contradict the primary geographic significance of the mark. Even if the public may associate California with a particular life-style, the record supports the Board's finding that the primary meaning remains focused on the state of California. Nonetheless, this court declines to review at this stage the Board's finding that CA Innovations' composite mark CALIFORNIA INNOVATIONS and Design is primarily geographic in nature. Rather the PTO may apply the entire new test on remand.

The second prong of the test requires proof that the public is likely to believe the applicant's goods originate in California. The Board stated that the examining attorney submitted excerpts from the Internet and the NEXIS database showing "some manufacturers and distributors of backpacks, tote bags, luggage, computer cases, and sport bags . . . headquartered in California." The Board also acknowledged articles "which make reference to companies headquartered in California which manufacture automobile accessories such as auto organizers," as well as the "very serious apparel and sewn products industry" in California.

A great deal of the evidence cited in this case relates to the fashion industry, which is highly prevalent in California due to Hollywood's influence on this industry. However, clothing and fashion have nothing to do with the products in question. At best, the record in this case shows some

general connection between the state of California and backpacks and automobile organizers. However, because CA Innovations has limited its appeal to insulated bags and wraps, the above referenced evidence is immaterial. Therefore, this opinion has no bearing on whether the evidence of record supports a rejection of the application with regard to any goods other than those identified in CA Innovations' application under International Class 21, namely insulated bags and wraps.

CA Innovations argues that the examining attorney provided no evidence at all concerning insulated bags for food and wraps for cans in California. The Government contends that the evidence shows some examples of a lunch bag, presumed to be insulated, and insulated backpacks. According to the government, the evidence supports a finding of a goods-place association between California and insulated bags and wraps. This court has reviewed the publications and listings supplied by the examining attorney. At best, the evidence of a connection between California and insulated bags and wraps is tenuous. Even if the evidence supported a finding of a goods-place association, the PTO has yet to apply the materiality test in this case. This court declines to address that issue and apply the new standard in the first instance. Accordingly, this court vacates the finding of the Board that CA Innovations' mark is primarily geographically deceptively misdescriptive, and remands the case for further proceedings. On remand, the Board shall apply the new three-prong standard.

### COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*