THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
Feb. 1, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Cheezwhse.com, Inc.

————

Serial No. 78694122

————

William Dunnegan of Perkins & Dunnegan for Cheezwhse.com, Inc.

Tasneem Hussain, Trademark Examining Attorney, Law Office 105 (Thomas G. Howell, Managing Attorney).

————

Before Seeherman, Quinn and Grendel, Administrative Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Cheezwhse.com, Inc., applicant herein, seeks registration on the Principal Register of the mark NORMANDIE CAMEMBERT (in standard character form) for goods identified in the application as "cheese."[1]

---

[1] The application was filed on August 17, 2005, and is based on applicant's asserted bona fide intention to use the mark in commerce. Trademark Act Section 1(b), 15 U.S.C. §1051(b).

The Trademark Examining Attorney has issued final refusals to register on the grounds (1) that applicant has failed to comply with the Trademark Examining Attorney's request for information under Trademark Rule 2.61(b), 37 C.F.R. §2.61(b); (2) that the applied-for mark is primarily geographically descriptive of the goods and thus unregistrable under Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); and (3) in the alternative to the Section 2(e)(2) refusal, that the mark is primarily geographically deceptively misdescriptive of the goods and thus unregistrable under Trademark Act Section 2(e)(3).[2]

We affirm each of the refusals to register.

We turn first to the refusal under Trademark Rule 2.61(b). That rule provides that "[t]he examiner may require the applicant to furnish such information and exhibits as may be reasonably necessary to the proper examination of the application." If an applicant fails to comply with the Trademark Examining Attorney's requirement under Trademark Rule 2.61(b), registration of applicant's mark may be refused on that basis. *See In re DTI Partnership LLP*, 67 USPQ2d 1699 (TTAB 2003).

---

[2] This alternative Section 2(e)(3) refusal is also stated to be pursuant to Trademark Act Section 2(a). We deem the refusal to be pursuant solely to Trademark Act Section 2(e)(3). *See In re South Park Cigar Inc.*, 82 USPQ2d 1507 (TTAB 2007).

In the first Office action, the Trademark Examining Attorney required applicant to provide information as to the geographic origin of applicant's goods. In its response to the Office action, applicant failed to even acknowledge the requirement, much less comply with it. The Trademark Examining Attorney made the requirement final in the final Office action. In its appeal brief (the next paper applicant filed), applicant again failed to acknowledge the requirement. The Trademark Examining Attorney's appeal brief reiterated the requirement. Applicant did not file a reply brief or otherwise respond to the requirement. In short, despite repeated requests and reminders, applicant did not comply with or even acknowledge the Trademark Examining Attorney's requirement for information.

In view thereof, the refusal to register based on applicant's failure to comply with Trademark Rule 2.61(b) is affirmed. Moreover, and as discussed below, because applicant has inexcusably failed to provide the requested information regarding the geographic origin of its goods, our findings with respect to the substantive Section 2(e)(2) refusal include a presumption, unfavorable to applicant, that applicant's goods in fact originate or will originate in or from the place named in the mark.

Similarly with respect to the alternative Section 2(e)(3) refusal, we alternatively presume, unfavorably to applicant, that applicant's goods do not or will not originate in or from the place named in the mark.

We turn next to the refusal under Trademark Section 2(e)(2). The test for determining whether a mark is primarily geographically descriptive is whether (1) the primary significance of the mark is the name of a place known generally to the public, and (2) the public would make a goods/place association, that is, believe that the goods identified in the application originate in that place. If these elements are met, and if the applicant's goods in fact originate or will originate in or from the place named in the mark, then the mark is primarily geographically descriptive of the goods. *See In re Societe Generale des Eaux Minerales de Vittel S.A.,* 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987); *In re Joint-Stock Co. "Baik"*, 80 USPQ2d 1305 (TTAB 2006); and *In re JT Tobacconists*, 59 USPQ2d 1080 (TTAB 2001).

Under the first element of the Section 2(e)(2) refusal, we find that the primary significance of the mark NORMANDIE CAMEMBERT is that of a generally known geographic place, i.e., Normandy, France. First, the record shows that "Normandy" is the name of a generally known geographic

4

place. Webster's New Geographical Dictionary (1984), at 855, states that Normandy is an "historical region of NW France," and that it was the site of the famous Battle of Normandy in 1944 during World War II.[3] Both the Trademark Examining Attorney and applicant have submitted and relied upon the Wikipedia entry for "Normandy," which states that Normandy is "a geographical region in northern France." Applicant does not dispute that Normandy is a generally-known geographic place.

Next, the record shows that NORMANDIE is the French spelling for "Normandy," and that it refers to the same region of France. See Webster's New Geographical Dictionary (1984) at 855 ("or Fr. Normandie"), the Wikipedia entry for "Normandy" ("in French: Normandie"), the entry "Normandie" in WordNet 2.0 ("Syn. Normandie, Normandy), and the entry at www.ultralingua.net ("Normandy… also called Normandie"). Based on this evidence, we find that consumers would recognize NORMANDIE as the equivalent of NORMANDY.

Next with respect to the first element of the refusal, the record shows that the word CAMEMBERT appearing in

---

[3] The Board may take judicial notice of dictionary definitions. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

applicant's mark is a generic term for the goods identified in applicant's application, i.e., "cheese." "Camembert" is defined as "soft cheese: a small round soft French cheese…" (MSN Encarta), and as "a creamy, mold-ripened cheese that softens on the inside as it ages" (Webster's II New Riverside University Dictionary (1988) at 222). It is settled that the primarily geographic significance of a term (like NORMANDIE) is not overcome by the addition of a generic term (like CAMEMBERT). See In re J.T. Tobacconists, supra; In re Carolina Apparel, 48 USPQ2d 1542 (TTAB 1998); In re California Pizza Kitchen, Inc., 10 USPQ2d 1704 (TTAB 1988).

Finally with respect to the first element of the refusal, we are wholly unpersuaded by applicant's contention that because NORMANDIE in its mark ends with an "IE" rather than a "Y", the primary significance of the word NORMANDIE in its mark is that of the former ocean liner SS NORMANDIE. First, applicant's mark is not SS NORMANDIE CAMEMBERT, it is simply NORMANDIE CAMEMBERT. Second, as discussed above, the name of the French geographic region at issue here is and can be spelled either as NORMANDIE or as NORMANDY. On this record, we find that the primary geographical significance of NORMANDIE is not displaced or overcome by the fact that

6

there once was an ocean liner named SS NORMANDIE. *See In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986); *In re Cookie Kitchen, Inc.*, 228 USPQ 873 (TTAB 1986).

For the reasons discussed above, we find that the primary significance of NORMANDIE CAMEMBERT is its geographic significance as the name of a well-known place, i.e., Normandy, France. The first element of the Section 2(e)(2) refusal accordingly is established.

We next find, under the second element of the Section 2(e)(2) refusal, that a goods/place association exists between applicant's goods, i.e., cheese, and the geographic place named in the mark, i.e., Normandy. It is settled that the requisite goods/place association may be presumed if the applicant's own goods originate or will originate in or from the place named. *See In re Joint-Stock Co. "Baik"*, *supra; In re JT Tobacconists, supra; In re California Pizza Kitchen Inc., supra;* and *In re Handler Fenton Westerns, Inc.*, 214 USPQ 848 (TTAB 1982). We find that such a presumption is warranted in this case.

First, as discussed above, because applicant failed to comply with the Rule 2.61(b) requirement to specify the geographic origin of its goods, we are presuming for purposes of this Section 2(e)(2) refusal that applicant's goods in fact originate or will originate in or from

7

Normandy.  Because applicant's goods are presumed to originate in or from Normandy, we may further presume that the requisite goods/place association exists between cheese and Normandy.

Second, and regardless of the actual origin of applicant's own cheese, the evidence of record establishes that a goods/place association exists between Normandy and cheese. Indeed, Normandy is famous for its cheeses, generally, and for its Camembert cheese in particular.  The website www.france-for-visitors.com states that "the most famous products of Normandy's meadow-munching cows are, of course, their cheeses."  The Wikipedia entry for "Normandy" submitted by applicant states that "[t]he dairy produce of the region is renowned: its cheeses are world famous and include Camembert…."  The website www.cuisinenet.com, under the heading "Cheese in France," states that "Normandy is famous for her dairy products and makes many of France's best cheeses.  Camembert, a soft cheese like Brie, is one of the most famous."  The website www.fromagefrancais.com states that "Camembert de Normandie" is "a very popular French cheese coming from the Normandie region in France…."  The website www.camembert-france.com states that "Camembert is a lovely village in Normandy and home of the world-famous Camembert cheese."

Based on this evidence, we find that there is a goods/place association between cheese and Normandy. The second element of the Section 2(e)(2) refusal accordingly is established.

In short, we find that the primary significance of applicant's NORMANDIE CAMEMBERT mark is the name of a generally-known geographic location, i.e., Normandy, France. We also find that a goods/place association exists between cheese and Normandy, France. Based on these findings, and because we are presuming that applicant's goods originate or will originate in or from Normandy, France, we conclude that applicant's mark is primarily geographically descriptive of applicant's goods, and that applicant's mark accordingly is unregistrable under Trademark Act Section 2(e)(2).

We turn now to the Trademark Examining Attorney's alternative refusal under Trademark Act Section 2(e)(3) on the ground that applicant's mark is primarily geographically deceptively misdescriptive of applicant's goods. This refusal is proper if it is established that (1) the primary significance of the mark is the name of a generally-known geographic place, (2) the applicant's goods do not or will not originate in the place named, (3) purchasers would be likely to believe that the goods

9

originate in the place named (i.e., that a goods/place association exists), and (4) the misrepresentation as to the geographic origin of the goods is or would be a material factor in the purchaser's decision to purchase the goods. *See In re California Innovations Inc.*, 329 F.3d 1334, 66 USPQ2d 1853 (Fed. Cir. 2003); *In re South Park Cigar Inc., supra.*

For all of the reasons discussed above in connection with the Section 2(e)(2) refusal, we find that the primary significance of applicant's NORMANDIE CAMEMBERT mark is that of a generally-known geographic location, i.e., Normandy, France. We likewise find that the evidence of record establishes that there is a goods/place association between applicant's goods, cheese, and the place named in the mark, Normandy. Those two elements of the Section 2(e)(3) refusal therefore are established.

As noted above, applicant failed to comply with the Trademark Examining Attorney's Rule 2.61(b) requirement for information regarding the geographic origin of applicant's goods. In such circumstances, we deem it appropriate to presume, for purposes of this Section 2(e)(3) refusal (and in the alternative to our finding for purposes of the Section 2(e)(2) refusal), that applicant's cheese in fact will not originate in or from Normandy, France. The third

element of the Section 2(e)(3) refusal therefore is established.

Under the final element of the refusal, we find that the evidence of record establishes that applicant's mark's misrepresentation as to the geographic origin of applicant's cheese, i.e., that the cheese originates in or from Normandy, France, is or would be material to the decision to purchase the goods. We base this finding on the same evidence we discussed above in connection with the second element of the Section 2(e)(2) refusal. That evidence not only establishes that a goods/place association exists between cheese and Normandy, but it also establishes that cheese is a principal product of Normandy and that Normandy indeed is famous for its cheeses, including its Camembert cheese. This evidence suffices to establish the materiality element of the Section 2(e)(3) refusal. *See In re California Innovations, supra; In re South Park Cigar Inc., supra.*

In short, we find that the evidence of record establishes each element of the alternative Section 2(e)(3) refusal. The primary significance of the mark is the name of a generally-known geographic location, i.e., Normandy, France. A goods/place association exists between cheese and Normandy. Applicant's goods do not or will not

11

originate in or from Normandy. The mark's misrepresentation of the geographic origin of the goods is or would be material to the decision to purchase the goods. Thus, we conclude that NORMANDIE CAMEMBERT is primarily geographically deceptively misdescriptive of "cheese," and that applicant's mark accordingly is unregistrable under Trademark Act Section 2(e)(3).

In summary, we affirm all three of the Trademark Examining Attorney's refusals. First, we affirm the refusal to register which is based on applicant's failure to comply with the Trademark Examining Attorney's proper Rule 2.61(b) requirement for information as to the geographic origin of applicant's goods. Second, based on our presumption that applicant's goods originate or will originate in or from the place named in the mark, we find that applicant's mark is primarily geographically descriptive of applicant's goods, and we therefore affirm the Section 2(e)(2) refusal. Third, based on our alternative presumption that applicant's goods do not or will not originate in or from the place named in the mark, we find that applicant's mark is primarily geographically deceptively misdescriptive of applicant's goods, and we therefore affirm the alternative Section 2(e)(3) refusal.

Decision: The refusals to register are affirmed.

12